The TORRINGTON COMPANY, Plaintiff,

Federal–Mogul Corporation,
Plaintiff–Intervenor,

v.

UNITED STATES, Defendant,

SKF USA Inc. and SKF GmbH; GMN Georg Muller Nurnberg AG; NTN Bearing Corporation of America and NTN Kugellagerfabrik (Deutschland) GmbH; Caterpillar Inc.; FAG Kugelfischer Georg Schafer KGaA; INA Walzlager Schaeffler KG and INA Bearing Company, Inc.; Messerschmitt–Boelkow–Blohm, GmbH and MBB Helicopter Corporation, Defendant–Intervenors.

Court No. 91–08–00567.
Slip Op. 94–84.

United States Court of International Trade.

May 24, 1994.

Stewart and Stewart, Eugene L. Stewart, Terence P. Stewart, James R. Cannon, Jr., Wesley K. Caine, Myron A. Brilliant, Geert De Prest, Margaret E.O. Edozien, Robert A. Weaver, David Scott Nance and Amy S. Dwyer, Washington, DC, for plaintiff The Torrington Co.

Frederick L. Ikenson, P.C., Frederick L. Ikenson, J. Eric Nissley and Joseph A. Perna, V, Washington, DC, for plaintiff-intervenor Federal–Mogul Corp.

Frank W. Hunger, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Velta A. Melnbrencis and Jane E. Meehan (John D. McInerney, Sr. Counsel, Dean A. Pinkert, Stephen J. Claeys, Douglas S. Cohen and

Thomas H. Fine, Attorney–Advisors, Office of the Chief Counsel, of counsel), for Import Admin., U.S. Dept. of Commerce, Washington, DC, for defendant.

Howrey & Simon, Herbert C. Shelley, Scott A. Scheele, Alice A. Kipel, Juliana M. Cofrancesco and Thomas Trendl, Washington, DC, for defendant-intervenors SKF USA Inc. and SKF GmbH.

Grunfeld, Desiderio, Lebowitz & Silverman, Bruce M. Mitchell and Philip S. Gallas, New York City, for defendant-intervenor GMN Georg Muller Nurnberg AG.

Barnes, Richardson & Colburn, Robert E. Burke, Donald J. Unger, Kazumune V. Kano and Diane A. MacDonald, Chicago, IL, for defendant-intervenors NTN Bearing Corp. of America and NTN Kugellagerfabrik (Deutschland) GmbH.

Powell, Goldstein, Frazer & Murphy, Richard M. Belanger and Neil R. Ellis, Washington, DC, for defendant-intervenor Caterpillar Inc.

Grunfeld, Desiderio, Lebowitz & Silverman, Max F. Schutzman, David L. Simon, Andrew B. Schroth and Matthew L. Pascocello, New York City, for defendant-intervenor FAG Kugelfischer Georg Schafer KGaA.

Arent Fox Kintner Plotkin & Kahn, Stephen L. Gibson and Eleanor Pelta, Washington, DC, for defendant-intervenors INA Walzlager Schaeffler KG and INA Bearing Co., Inc.

Rogers & Wells, William Silverman and Ryan Trainer, Washington, DC, for defendant-intervenor Messerschmitt–Boelkow–Blohm, GmbH and MBB Helicopter Corp.

### OPINION

TSOUCALAS, Judge:

Defendant-intervenors, SKF USA Inc., SKF GmbH ("SKF"), INA Walzlager Schaeffler KG, INA Bearing Company, Inc. ("INA"), NTN Bearing Corporation of America and NTN Kugellagerfabrik (Deutschland) GmbH ("NTN") contest certain aspects of the Department of Commerce, International Trade Administration's ("Commerce"), final results in the first administrative review of the antidumping duty orders on antifriction bearings from the Federal Republic of Germany. *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From the Federal Republic of Germany; Final Results of Antidumping Duty Administrative Review,* 56 Fed.Reg. 31,692 (1991).

### Background

In *Torrington Co. v. United States,* 17 CIT ——, ——, 832 F.Supp. 379, 393 (1993), the Court remanded this case to Commerce to

add the full amount of VAT [value-added tax] paid on each sale in the home market to FMV [foreign market value] without adjustment; to determine if SKF"s method of reporting discounts in the home market for SKF GmbH meets the standard required for those discounts to be treated as direct selling expenses and subtracted from FMV or if information on the administrative record does not support deduction as direct expenses, to treat these discounts as indirect selling expenses; to develop a methodology which removes discounts paid on sales of out of scope merchandise from any adjustments made to FMV for SKF's discounts or, if no viable method can be developed, to deny such an adjustment in its calculation of FMV; and to treat FAG's [FAG Kugelfischer Georg Schafer KGaA] currency hedging expenses as indirect selling expenses pursuant to 19 C.F.R. § 353.-56(b)(2).

In addition, on March 16, 1993, the Court granted Commerce permission to correct two ministerial computer errors contained in the final margin programs for INA.

On January 6, 1994, Commerce filed with this Court its Final Results of Redetermination Pursuant to Court Remand, *The Torrington Company v. United States,* Slip Op. 93–168 (August 20, 1993) (*"Redetermination on Remand"*). In its Redetermination on Remand, Commerce stated that it will "add to USP [United States price] the result of multiplying the foreign market tax rate by the price of the United States merchandise at the same point in the chain of commerce that the foreign market tax was applied to foreign market sales" and "will also adjust the USP tax adjustment and the amount of tax includ-

ed in FMV." *Redetermination on Remand* at 3. Commerce also determined that SKF's discount claim "does not meet the standard required for the discounts to be treated as direct selling expenses." Concluding that it was "unable to develop an appropriate methodology" to treat these discounts as direct selling expenses, Commerce "denied SKF's home market discount adjustment." *Id.* at 5. In addition, Commerce "treated FAG's currency hedging expenses as indirect selling expenses pursuant to 19 C.F.R. § 353.-56(b)(2)." *Id.* Further, in accordance with the Court's permission granted on March 16, 1993, Commerce corrected the following ministerial computer errors with respect to INA:

> (1) an error in the program for CRBs [cylindrical roller bearings] manufactured by INA which precluded the comparison of United States bearing models with both identical bearings as well as home market families of bearings, and (2) an error in the program for BBs [ball bearings] and CRBs manufactured by INA, which precluded the adjustment of FMV for indirect selling expenses pursuant to the exporter's sale price ["ESP"] offset when FMV was based upon constructed value.

*Id.* at 6.

### Discussion

■ Commerce's final results filed pursuant to a remand will be sustained unless that determination is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1988). Substantial evidence is "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938); *Alhambra Foundry Co. v. United States,* 12 CIT 343, 345, 685 F.Supp. 1252, 1255 (1988).

### 1. *VAT Calculation and Adjustment*

■ Commerce states that it has changed its methodology in accordance with this Court's decision in *Federal–Mogul Corp. v. United States,* 17 CIT ——, 834 F.Supp. 1391 (1993), and "will add to USP the result of multiplying the foreign market tax rate by

the price of the United States merchandise at the same point in the chain of commerce that the foreign market tax was applied to foreign market sales." Commerce further states that it "will also adjust the USP tax adjustment and the amount of tax included in FMV." *Redetermination on Remand* at 3.

SKF states that the approach Commerce has taken "is unlawful in that it is contrary to 19 U.S.C. § 1677a(d)(1)(C)" and "is inconsistent" with the dictates of this Court's decision in *Federal–Mogul, supra. Comments of Defendant–Intervenors, SKF USA Inc. and SKF GmbH, Upon Redetermination on Remand ("SKF's Comments")* at 2.

Torrington and Federal–Mogul agree with Commerce on this issue. *Torrington's Rebuttal Comments to Comments of Defendant–Intervenors on Commerce's Redetermination on Remand ("Torrington's Rebuttal Comments")* at 1–4; *Comments of Federal–Mogul Corporation in Rebuttal to the Comments of SKF USA Inc. and SKF GmbH on the Final Results of Redetermination Pursuant to Court Remand ("Federal–Mogul's Rebuttal Comments to Comments of SKF")* at 4–7.

There is no merit to SKF's argument. SKF agrees that Commerce has "acted consistently with judicial precedent" in applying the VAT rate to a packed, ex-factory price, "in that it has avoided the creation of margins where they do not otherwise exist." *SKF's Comments* at 4 n. 1.

On remand in this case, Commerce complied with this Court's instruction. In so doing, Commerce performed the recalculation of the VAT adjustment in a manner consistent with its current administrative practice. Commerce describes the recalculation as follows:

> [Commerce] will add to USP the result of multiplying the foreign market tax rate by the price of the United States merchandise at the same point in the chain of commerce that the foreign market tax was applied to foreign market sales. [Commerce] will also adjust the USP tax adjustment and the amount of tax included in FMV. These adjustments will deduct the portions of the foreign market tax and the USP tax

adjustment that are the result of expenses that are included in the foreign market price used to calculate foreign market tax and are included in the United States merchandise price used to calculate the USP tax adjustment and that are later deducted to calculate FMV and USP. These adjustments to the amount of the foreign market tax and the USP tax adjustment are necessary to prevent our new methodology for calculating the USP tax adjustment from creating antidumping duty margins where no margins would exist if no taxes were levied upon foreign market sales.

*Redetermination on Remand* at 3.

SKF has presented no sound reason for this Court to disturb Commerce's Redetermination on Remand with respect to the tax issue or to disturb Commerce's current administrative practice with regard to this issue. Therefore, Commerce's Redetermination on Remand on this issue is affirmed.

## 2. *SKF's Home Market Discounts*

█ In *Torrington,* the Court directed Commerce to determine whether SKF's method of reporting discounts for SKF GmbH meets the standard required for those discounts to be treated as direct selling expenses and subtracted from FMV. *Torrington Co.,* 17 CIT at ——, 832 F.Supp. at 390. The Court also directed Commerce to develop a methodology which removes discounts paid on SKF's sales of out of scope merchandise from any adjustments made to FMV for discounts. If no viable method could be developed, the Court instructed Commerce to deny such an adjustment in the calculation of FMV. *Id.*

SKF argues, with regard to SKF's German home market cash discounts, that Commerce's remand results are both factually and legally in error. SKF further contends that Commerce's "characterization of how SKF calculated these discounts is incorrect, has *no* record support and, indeed, is contradicted by the record." *SKF's Comments* at 4.

In the Redetermination on Remand, Commerce states:

SKF calculated discounts by allocating total discounts granted over all sales. SKF did not provide transaction-, product- or customer-specific data for its discount claim. Because SKF's discount claim was not shown to have a reasonably direct relationship to the sales under consideration, this adjustment does not meet the standard required for discounts to be treated as direct selling expenses. Furthermore, based on the record submitted to us, we have no information that would allow us to segregate discounts on in-scope merchandise from those attributable to out-of-scope merchandise. Because we are unable to develop an appropriate methodology, we denied SKF's home market discount adjustment, as instructed by the Court.

*Redetermination on Remand* at 5.

Torrington agrees with Commerce's denial of SKF Germany's home market discount adjustment. Torrington states that "[w]hile SKF was able to demonstrate the amount of cash discounts that could have been applicable to individual transactions, it did not report the discounts that had in fact been applicable on a transaction-specific or product-specific basis." Torrington contends "[t]his means that cash discounts were likely assigned to sales on which no discounts were actually granted." *Torrington's Rebuttal Comments* at 5.

In remanding this matter to Commerce, this Court stated that the it cannot permit Commerce to use a methodology which allows for the inclusion of discounts paid on out of scope merchandise in calculating adjustments to FMV and ultimately the dumping margins. *Torrington Co. v. United States,* 17 CIT ——, ——, 818 F.Supp. 1563, 1579 (1993). On remand, Commerce correctly implemented this Court's instructions. Commerce found that, based on the information of record, SKF's discount claim was "not shown to have a reasonably direct relationship to the sales under consideration." *Redetermination on Remand* at 5.

Comments submitted have not changed the Court's position on this issue. As Commerce has complied with this Court's remand instructions with regard to this issue, Commerce's redetermination remand results with

respect to the treatment of discounts is affirmed.

### 3. *FAG's Currency Hedging Expenses*

Commerce treated FAG's currency hedging expenses as indirect selling expenses pursuant to 19 C.F.R. § 353.56(b)(2) in accordance with the Court's instructions. *Redetermination on Remand* at 5. Commerce's redetermination remand results with respect to the treatment of FAG's currency hedging expenses is affirmed.

### 4. *Ministerial Computer Errors*

■ On remand, Commerce corrected certain computer errors with respect to INA which it has acknowledged are ministerial in nature. Specifically, programming corrections were made for:

(1) an error in the program for CRBs manufactured by INA which precluded the comparison of United States bearing models with both identical bearings as well as home market families of bearings, and (2) an error in the program for BBs and CRBs manufactured by INA, which precluded the adjustment of FMV for indirect selling expenses pursuant to the exporter's sale price offset when FMV was based upon constructed value.

*Redetermination on Remand* at 6.

INA claims that Commerce failed to fully correct the errors noted above. *Comments of INA Walzlager Schaeffler KG and INA Bearing Company, Inc. on the Final Results of Redetermination Pursuant to Court Remand* at 2–3. In addition, INA claims that Commerce's use of a revised methodology in the redetermination remand results for calculation of the foreign market tax adjustment to USP resulted in an error with respect to INA's BBs. *Id.* at 4. Therefore, INA asks that the Court further remand this case to Commerce for correction of:

(1) the error in the program for INA CRBs which precluded proper model matching, (2) the error in the program for INA CRBs which precluded deduction ESP offset when FMV was based upon constructed value and (3) the error in the program for INA BBs which resulted in

incorrect calculation of the VAT adjustment to U.S. price.

*Id.* at 4–5.

Federal–Mogul agrees with INA that this case should be remanded to Commerce for correction of the programming errors in the final margin program for INA BBs. *Comments of Federal–Mogul Corporation in Response to the Comments of INA Walzlager Schaeffler KG and INA Bearing Company, Inc. on the Final Results of Redetermination Pursuant to Court Remand* at 1–2.

Commerce states that "[u]pon examination of the computer programming errors complained about in the comments, Commerce has concluded that the errors, in fact, occurred and should be corrected." *Defendant's Response to the Comments of INA Walzlager Schaeffler KG and INA Bearing Company, Inc. on the Final Results of the Redetermination Pursuant to Court Order.* Commerce further states that, "in examining the errors committed in connection with the calculation of the foreign market tax adjustment to U.S. price for ball bearings, Commerce also ascertained that an identical programming error was committed in connection with INA's home market price." Commerce requests that, "upon remand, this programming error should also be corrected." *Id.*

NTN alleges that, in calculating USP, Commerce erroneously multiplied NTN's total U.S. sales by a factor of 8.56, thereby creating a huge Potential Uncollected Dumping Duties ("TOTPUDD") number. *NTN's Comments on the ITA's Redetermination on Remand* at 2–3. NTN states, "When this number is divided by the total entered value, the assessment rate becomes extremely, and obviously incorrectly, high." *Id.* at 3. Therefore, NTN seeks another remand to Commerce so the error may be corrected before final judgment is issued. *Id.*

Defendant argues that it committed a harmless error in regard to NTN and that NTN's request for another remand for correction of this error should be denied. *Defendant's Response to NTN's Comments on the ITA's Redetermination on Remand* at 2.

In respect to INA, this case is remanded to Commerce for correction of the program-

ming errors identified by INA and the error identified by Commerce. Since this case is being remanded for the correction of programming errors as to INA, the clerical error as to NTN should also be corrected.

## Conclusion

In accordance with the foregoing opinion, this case is remanded to Commerce, with respect to INA, for the correction of the programming errors identified by INA and the error identified by Commerce. Since this case is being remanded for the correction of programming errors as to INA, the clerical error as to NTN should also be corrected. Commerce's Redetermination on Remand is affirmed as to all other issues.

The remand results are due within thirty (30) days from the date this opinion is entered. Comments or responses are due within fifteen (15) days thereafter. Rebuttal comments are due within ten (10) days of the date responses or comments are due.